**Nos. 22-8008 & 22-8009**

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

VINCENT TRIPICCHIO,
*Plaintiff-Respondent,*

v.

THE UPS STORE, INC. AND JB&A ENTERPRISES, INC.
*Defendants-Petitioners.*

BARBARA McLaren,
*Plaintiff-Respondent,*

v.

THE UPS STORE, INC., et al.
*Defendants-Petitioners.*

On Petition for Permission to Appeal from the U.S. District Court for the District of New Jersey, Case No. 3:21-cv-14512 and Case No. 3:21-cv-14424, Hon. Freda L. Wolfson, C.J.

## PLAINTIFF-RESPONDENT TRIPICCHIO'S OPPOSITION TO DEFENDANTS/ PETITIONERS' PETITION FOR PERMISSION TO APPEAL FROM REMAND ORDER PURSUANT TO 28 U.S.C. § 1453(c)(1)

STEPHEN P. DeNITTIS
DeNITTIS OSEFCHEN PRINCE, P.C.
525 Route 73 South, Suite 410
Marlton, NJ 08053

*Counsel for Plaintiff Tripicchio*

February 14, 2022

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES...............................................................iii-iv

Summary of Complaint...........................................................................1

Summary of Procedural History...............................................................2

Summary of Argument...........................................................................4

I.    DEFENDANTS HAD THE BURDEN OF PROVING A
      TIMELY REMOVAL.........................................................................6

II.   THE DISTRICT COURT CORRECTLY RULED THAT
      THE AUGUST 3, 2021 REMOVAL WAS UNTIMELY
      BECAUSE DEFENDANTS HAD ACTUAL KNOWLEDGE
      THAT THE AMOUNT IN CONTROVERSY WAS OVER
      $5 MILLION SINCE AT LEAST DECEMBER 11, 2020......................7

      A.    The District Court Correctly Held that Defendants' Time to
            Remove Began to Run Once Defendants Knew Enough to
            Reasonably Conclude that the Amount in Controversy was
            $5 Million.........................................................................8

      B.    The District Court Correctly Held that to Determine Whether
            the Amount in Controversy Exceeds CAFA's $5 Million
            Threshold, One Only Needs to Multiply the Number of Class
            Members by the Amount Being Sought Per Class Member.............9

      C.    The District Court Correctly Held that the Class Complaint
            Served on November 19, 2020 Advised Defendants of the
            Dollar Amount Sought Per Class Member and the Proposed
            Class Definition................................................................10

D.    The District Court Correctly Found that Defendants Had Actual Knowledge Since At Least December 11, 2020 that the Number of Notary Customers in New Jersey During the Class Period Exceeded One Million and Thus that the $5 million CAFA Threshold Was Met....................................12

E.    The District Court Correctly Noted that Defendant UPS Pursued a Deliberate Strategy of Refusing to Act on What It Knew About the Amount in Controversy For Eight Months Until UPS Obtained a Disadvantageous Ruling from the New Jersey Appellate Division...................................................15

F.    Judge Wolfson Correctly Rejected the Defense Arguments About Whether and When Defendants Were Required to Conduct an Investigation into the Amount in Controversy...............18

G.    The District Court Also Correctly Recognized that UPS Had Previously Pursued a Similar Tactic in a Notary Fee Class Action In Illinois.............................................................19

Conclusion...........................................................................20

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Avila v. Rue21, Inc.*,
    432 F. Supp. 3d 1175, 1181 (E.D. Cal. 2020)....................................15

*Berry v. Wal-Mart Stores, E., L.P.*,
    No. 21-3496, 2022 U.S. Dist. LEXIS 18577, at \*10
    (E.D. Pa. Feb. 2, 2022).................................................................9

*Carroll v. United Air Lines*,
    7 F. Supp. 2d 516, 521 (D.N.J. 1998)..............................................8

*FDIC v. Wissel & Sons Constr. Co.*,
    881 F. Supp. 119, 122 (D.N.J. 1995).............................................6

*Galvanek v. AT&T, Inc.*,
    Civil Action No. 07-CV-2759(FLW),
    2007 U.S. Dist. LEXIS 81764, at \*5 (D.N.J. Nov. 5, 2007).....................6

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
    707 F.3d 1136, 1140 (9th Cir. 2013)..............................................15

*Lior v. Sit*,
    913 F. Supp. 868, 874 (D.N.J. 1996)..............................................7

*McLaren v. UPS Store Inc., et al.*,
    New Jersey Superior Court, Mercer County, MER-L-9019-20.................3

*McLaren v. UPS Store, Inc., et al.*,
    No. A-1612-20, 2021 N.J. Super. Unpub. LEXIS 1510,
    at \*15-16 (Super. Ct. App. Div. July 22, 2021)......3, 4, 13, 14, 15, 16, 17, 18

*McPherson v. Peelle Co.*,
    CIVIL ACTION NO. 94-6280, 1995 U.S. Dist. LEXIS 1619, at \*4
    (E.D. Pa. Feb. 6, 1995)...............................................................7

*Miniet v. Automated Packaging Sys.*,
   CIVIL ACTION NO. 96-1970 (AJL),
   1996 U.S. Dist. LEXIS 21805, at *7 (D.N.J. May 29, 1996)....................7

*Mountain Ridge State Bank v. Inv'r Funding Corp.*,
   763 F. Supp. 1282, 1288 (D.N.J. 1991)............................................6

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
   720 F.3d 1121, 1126 (9th Cir. 2013)...............................................16

*Shavers, et al. v. The UPS Store, Inc. et al.*,
   No. 21-00720 (N.D. Ill. July 19, 2021)......................................19, 20

*Sims v. PerkinElmer Instruments, LLC*,
   No. 04-3773, 2005 U.S. Dist. LEXIS 5300, 2005 WL 746884, at *2
   (E.D. Pa. Mar. 31, 2005)............................................................9

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588, 592, 133 S. Ct. 1345, 1348 (2013)................................9

## STATUTES

**Page(s)**

28 U.S.C. § 1446(b)....................................................................7, 8

28 U.S.C. § 1446(b)(1)....................................................................7

28 U.S.C. § 1446(b)(3)....................................................................7

Class Action Fairness Act, 28 U.S.C. § 1332(d)...............3, 4, 5, 9, 12, 15, 16, 18

New Jersey Consumer Fraud Act, N.J.S.A. § 56:12-17..............................1, 11

New Jersey Truth in Consumer Contract, Warranty and Notice Act,
N.J.S.A. § 56:12-17....................................................................1, 11

N.J.S.A. § 22A:4-14.............................................1, 3, 5, 10, 16, 17

## Summary of Complaint

On November 16, 2020, Plaintiff Tripicchio filed the class complaint in this matter, seeking certification of a class composed of New Jersey customers who, between November 30, 2014 and the present, were charged notary fees at UPS stores located in New Jersey which exceeded the statutory limits on notary fees of $2.50 set forth in N.J.S.A. § 22A:4-14.[1] As related in greater detail in the class complaint, Plaintiff alleges that Defendants employed a uniform policy of charging $15 for notarizing a document, which charge consisted of a $2.50 charge plus what Defendants describe on the receipts issued by Defendants as an additional $12.50 **"Notary Convenience"** fee. The gravamen of the class complaint is that any fee for notarizing a document beyond $2.50 – including the $12.50 **"Notary Convenience"** fee – is categorically barred by N.J.S.A. § 22A:4-14 and therefore unlawful in New Jersey. The class complaint brings claims under New Jersey law only, seeking an injunction under New Jersey legal and equitable principles to end the illegal policy of overcharges, and refunds of the illegal overcharges under the New Jersey Consumer Fraud Act, the New Jersey Truth in Consumer Contract, Warranty and

---

[1] N.J.S.A. § 22A:4-14, providing that a notary:

> **"shall receive a fee as follows:**
> **For administering an oath or taking an affidavit, $2.50.**
> **For taking proof of a deed, $2.50.**
> **For taking all acknowledgments, $2.50."**

Notice Act and New Jersey common law claims under a theory of unjust enrichment/disgorgement and breach of the implied contract of good faith and fair dealing.

## Summary of Procedural History

On November 16, 2020, Plaintiff Tripicchio filed the class complaint in New Jersey Superior Court, which alleged that were charging an illegal "Notary Convenience" fee of $12.50 per notarized document during a six year period. As admitted in the class complaint, Plaintiff Tripicchio had no idea how many New Jersey notary customers had actually been charged that $12.50 fee. The *Tripicchio* complaint was served upon Defendants on November 19, 2020.

Also on November 19, 2020, Plaintiff Tripicchio served written document requests and requests for admissions on Defendants, which sought to uncover the number of New Jersey notary customers who had been charged the $12.50 "Notary Convenience" fee at issue. Under the New Jersey Court rules, that discovery became due on became overdue on January 6, 2021 (*i.e.*, 50 days after service of the complaint). Defendants never responded or objected to that written discovery at any time while the matter was pending in New Jersey state court. Indeed, at the time of removal on August 3, 2020, neither Defendant had produced any discovery at all to Plaintiff Tripicchio.

2

On April 16, 2021 – more than three months before the removal – Defendants and Plaintiff Tripicchio in the case at bar submitted a proposed Consent Order asking the New Jersey Superior Court for a stay of the case at bar, pending a decision by the New Jersey Appellate Division in another action – *McLaren v. UPS Store Inc., et al.*, New Jersey Superior Court, Mercer County, MER-L-9019-20 – which, like the case at bar, alleged that Defendant UPS Store, Inc. was violating the $2.50 per document limit on notary fees found in N.J.S.A. § 22A:4-14. The New Jersey Superior Court refused to sign that proposed Consent Order and no stay was ever entered in the *Tripicchio* matter.

From November 16, 2020 until the removal on August 3, 2021, the *Tripicchio* matter remained in New Jersey state court, without Defendants ever suggesting to either Plaintiff or the New Jersey Superior Court that there was any possibility that the number of $12.50 "Notary Convenience" fees charged in New Jersey was anywhere the number needed to meet the $5 million CAFA threshold.

On July 22, 2021, the New Jersey Appellate Division issued its ruling in *McLaren v. UPS Store, Inc., et al.*, No. A-1612-20, 2021 N.J. Super. Unpub. LEXIS 1510, at *15-16 (Super. Ct. App. Div. July 22, 2021), holding N.J.S.A. § 22A:4-14 legally barred UPS Store, Inc. from charging any notary charge beyond the $2.50 fee set forth in that statute. UPS removed the *McLaren* case to federal court eight

3

days later on July 30, 2021 and then removed the *Tripicchio* case several days later on August 3, 2021.

The removal petition filed by Defendants in this matter on August 3, 2021 asserted that Defendants have at all times had a searchable computer data base showing the number of notary services sold by Defendants in New Jersey and that this data proved that the number of New Jersey customers who were charged the $12.50 "Notary Convenience" fee was high enough to meet the $5 million CAFA threshold. Shortly after the August 3, 2021 removal petition was filed, *Tripicchio* counsel learned that on December 11, 2020, Defendant UPS Store, Inc. had previously shared UPS spreadsheets with *McLaren* counsel showing that over 1 million customers had purchased notary services at UPS Stores in New Jersey during the class period (while refusing and failing to produce any such discovery to *Tripicchio*). Defendants' August 3, 2021 removal petition was the very first time Plaintiff's counsel had been told there was any possibility that the number of New Jersey customers who were charged the $12.50 "Notary Convenience" fee was high enough to potentially meet the $5 million CAFA threshold.

## **Summary of Argument**

The District Court's remand decision was clearly correct and therefore this Petition is a waste of time. Judge Wolfson correctly found that Defendants were fully aware that the $5 million amount in controversy was met in this matter no later than

December 11, 2021; eight months before Defendants removed this matter to federal court. Specifically, the District Court found that the class complaint served upon Defendants on November 19, 2020 fully advised Defendants of the dollar amount sought per class member and the proposed class definition. The District Court found that, while the *Tripicchio* complaint did not allege a specific class size (because Plaintiff Tripicchio lacked any records needed to calculate such a class size), Defendants had conducted a search of the UPS electronic data base by December 11, 2020 and Defendants had by that date determined that these records showed that over one million persons had purchased notary services at UPS stores in New Jersey during the class period (*i.e.* the proposed class). Thus, the District Court found that by December 11, 2020, Defendants knew there were over one million potential *Tripicchio* class members and Defendants had actual knowledge by that date that the $5 million amount in controversy requirement to trigger CAFA had been met.

Despite the foregoing, Defendants continued to litigate in New Jersey Superior Court for another eight months after December 11, 2020. Indeed, Defendants only removed a few days after the New Jersey Appellate Division ruled on July 26, 2021 that N.J.S.A. § 22A:4-14 legally barred UPS Store, Inc., from charging any notary charge beyond the $2.50. As correctly found by the District Court, the timing of that removal – coming after many months of litigation in state court and just a few days after a state court appellate ruling which eviscerated the

primary defense in this matter – is more than suspicious. It shows that Defendant UPS engaged in blatant forum shopping; sitting on what UPS knew about the amount in controversy for eight months while UPS tried its luck in state court, with Defendants only removing shortly after a crucial adverse state court appellate ruling against UPS.

As correctly held by the District Court, no case allows this. Rather, Defendants were clearly required to remove within 30 days after December 11, 2020, the date Defendants knew for a fact that the number of proposed class members was high enough, when multiplied by the dollar amount sought per class member (as specified in the *Tripicchio* complaint), to exceed the $5 million CAFA threshold.

## I. DEFENDANTS HAD THE BURDEN OF PROVING A TIMELY REMOVAL

Over and over, the courts of the Third Circuit have held that the removing party bears the burden of proving, *inter alia*, that the removal is timely. *See Galvanek v. AT&T, Inc.*, Civil Action No. 07-CV-2759(FLW), 2007 U.S. Dist. LEXIS 81764, at *5 (D.N.J. Nov. 5, 2007)(Judge Wolfson) (**"The party seeking removal bears the burden of establishing that the notice of removal was filed in a timely manner."**); *FDIC v. Wissel & Sons Constr. Co.*, 881 F. Supp. 119, 122 (D.N.J. 1995) (**"The burden of proof is on the removing party to show removal was timely."**); *Mountain Ridge State Bank v. Inv'r Funding Corp.*, 763 F. Supp. 1282, 1288 (D.N.J. 1991) (**"The party seeking removal has the burden of showing that federal**

**subject-matter jurisdiction exists, filing of the notice of removal was timely and that removal is proper.");** *Lior v. Sit*, 913 F. Supp. 868, 874 (D.N.J. 1996) **("The burden of proof is on the removing party to show removal was timely.");** *Miniet v. Automated Packaging Sys.*, CIVIL ACTION NO. 96-1970 (AJL), 1996 U.S. Dist. LEXIS 21805, at *7 (D.N.J. May 29, 1996) **("The burden of proof is on the removing party to show removal was timely.");** *McPherson v. Peelle Co.*, CIVIL ACTION NO. 94-6280, 1995 U.S. Dist. LEXIS 1619, at *4 (E.D. Pa. Feb. 6, 1995) **("The party seeking removal bears the burden of establishing that the notice of removal was filed timely.").**

## II.    THE DISTRICT COURT CORRECTLY RULED THAT THE AUGUST 3, 2021 REMOVAL WAS UNTIMELY BECAUSE DEFENDANTS HAD ACTUAL KNOWLEDGE THAT THE AMOUNT IN CONTROVERSY WAS OVER $5 MILLION SINCE AT LEAST DECEMBER 11, 2020

The general removal statute actually delineates two 30–day periods during which removal must occur. *See* 28 U.S.C. § 1446(b). The first statutory provision requires that a defendant file its notice of removal within thirty days of the service or receipt of the initial pleading. 28 U.S.C. § 1446(b)(1). The second section provides that if the case is not immediately removable, the defendant may file a notice of removal within thirty days of receiving **"a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."** 28 U.S.C. § 1446(b)(3). Neither

provision specifies the information that must be included in a plaintiff's initial pleading or other paper in order to trigger the 30–day periods set forth in 28 U.S.C. § 1446(b), or how a defendant should "ascertain" removability.

For the reasons outlined below, Defendants' August 3, 2021 removal was untimely because Defendants had actual knowledge as of December 11, 2020 that the number of proposed class members exceeded one million, and that this amount, multiplied by the dollar amount sought per lass member in the *Tripicchio* complaint, was over $5 million. Yet, Defendant failed to remove for another eight months.

A.  **The District Court Correctly Held that Defendants' Time to Remove Began to Run Once Defendants Knew Enough to Reasonably Conclude that the Amount in Controversy was $5 Million**

Even if a complaint does not expressly state an amount in controversy, a defendant cannot simply sit on its hands and fail and/or refuse to remove a case when the defendant is aware of facts that show the case meets the requirements for federal jurisdiction. Rather, the 30 day period prescribed by 28 U.S.C. § 1446(b) begins to run once a defendant can **"reasonably and intelligently conclude"** that the amount in controversy exceeds the jurisdictional minimum. *See Carroll v. United Air Lines*, 7 F. Supp. 2d 516, 521 (D.N.J. 1998):

> **"It is not necessary that the amount in controversy be stated in the initial pleading in order to trigger the running of the thirty-day period for removal. Rather, the thirty-day period begins to run when a defendant can reasonably and**

**intelligently conclude from the pleadings that the amount in controversy exceeds the jurisdictional minimum."**

*See also Sims v. PerkinElmer Instruments, LLC*, No. 04-3773, 2005 U.S. Dist. LEXIS 5300, 2005 WL 746884, at *2 (E.D. Pa. Mar. 31, 2005) (**"Overall, the thirty day removal period begins to run when Defendants can 'reasonably and intelligently' conclude that the amount in controversy exceeds the jurisdictional minimum."**); *Berry v. Wal-Mart Stores, E., L.P.*, No. 21-3496, 2022 U.S. Dist. LEXIS 18577, at *10 (E.D. Pa. Feb. 2, 2022) (**"the 30-day period begins to run when a defendant can reasonably and intelligently conclude that the amount in controversy exceeds the jurisdictional minimum."**).

**B.      The District Court Correctly Held that to Determine Whether the Amount in Controversy Exceeds CAFA's $5 Million Threshold, One Only Needs to Multiply the Number of Class Members by the Amount Being Sought Per Class Member**

As correctly held by the District Court, the amount in controversy under CAFA is based on the aggregate of the claims of individual class members. *See e.g. Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592, 133 S. Ct. 1345, 1348 (2013) (**"the statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of Knowles' proposed class and determine whether the resulting sum exceeds $5 million."**). Thus, the District Court correctly held that once Defendant knew the

9

number of proposed class members and the dollar amount sought in the complaint per class member, Defendants knew the amount in controversy.

**C.    The District Court Correctly Held that the Class Complaint Served on November 19, 2020 Advised Defendants of the Dollar Amount Sought Per Class Member and the Proposed Class Definition**

The District Court correctly found that the class complaint served on Defendants on November 19, 2020 set forth facts and allegations which put Defendants on actual notice of the amounts being sought per class member. Specifically, the complaint makes perfectly clear that Plaintiff's claim is that Defendants are pursuing a policy of charging $15 to notarize a document, consisting of a lawful $2.50 charge for notarizing a document, plus a $12 "Notary Convenience" fee. *See* Ta5[2] at Paragraph 21:    **"Throughout the class period, Defendants have pursued a uniform policy of charging an illegal $15 fee to notarize all documents unrelated to the sale or transfer of real estate at UPS Stores in New Jersey, with Defendants labeling this $15 fee on the receipt as a $2.50 'Notary' charge and a $12.50 'Notary Convenience' fee."** The class complaint alleges clearly on its face that the entire theory of this case is that the $2.50 notary fee is legal, but the additional $12 "Notary Convenience" fee violates N.J.S.A. § 22A:4-14's limit of $2.50 per notarization and is therefore illegal. *See*

---

[2] Cites to "A" shall refer to Defendants' Addendum. Because petition Nos. 22-2008 and 22-8009 are consolidated, Plaintiff Tripicchio's Addendum shall be referred to as "Ta".

Ta4 to Ta5, at Paragraphs 19-24. As such, the *Tripicchio* complaint makes abundantly clear that Plaintiff's claim is that each class member suffered an out-of-pocket loss of $12 (*i.e.*, the amount of the illegal **"Notary Convenience"** fee). The total recovery sought for each class member is also set forth clearly in the class complaint. The **"Prayer for Relief"** at the end of the complaint states plainly that the complaint seeks treble the out of pocket loss under the Consumer Fraud Act (*i.e.*, $36). Ta13. Paragraph 71 of the complaint states plainly that Plaintiff also seeks a $100 per class member statutory penalty under N.J.S.A. § 56:12-17 of the Truth in Consumer Contract, Warranty and Notice Act. Ta11. Thus, the face of the *Tripicchio* complaint itself made very clear to Defendants in November of 2020 that Plaintiff sought $136 per class member (*i.e.*, a $12 out of pocket loss, trebled to $36, plus a $100 per person statutory penalty), plus attorney's fees and costs.

Thus, at the time the *Tripicchio* complaint was served on Defendants on November 19, 2020, the only missing ingredient needed to calculate the amount in controversy was the number of class members (*i.e.*, the number of persons who purchased notary services at a UPS store in New Jersey during the class period). At the time the complaint was filed, Plaintiff Tripicchio could not calculate the amount in controversy because Plaintiff had no idea how many persons were charged this illegal $12 **"Notary Convenience"** fee by Defendants or who otherwise fit within the class definition. Indeed, there was no way Plaintiff could have known the number

of such persons, since Plaintiff is merely an individual consumer who wanted to get a power of attorney document notarized and had no access to UPS books and records which would provide this information.

Indeed, the *Tripicchio* complaint states plainly at Paragraph 38 that, at the time the complaint was filed, only Defendants knew the exact number of persons to whom Defendants charged the illegal $12 "Notary Convenience" fee. Ta7 at Paragraph 38: **"The exact number and identities of the persons who fit within each proposed class are contained in Defendants' records and can be easily ascertained from those records."** Until the date of removal on August 3, 2021, Defendants never shared that information with Plaintiff Tripicchio, even though Defendants unquestionably knew the number of proposed class members since at least December 2020, and even though Plaintiff Tripicchio had served written discovery on Defendants in November 2020 seeking exactly that information.

D.     <u>**The District Court Correctly Found that Defendants Had Actual Knowledge Since At Least December 11, 2020 that the Number of Notary Customers in New Jersey During the Class Period Exceeded One Million and Thus that the $5 million CAFA Threshold Was Met**</u>

As noted by the District Court, Defendants admitted in their August 3, 2021 removal petition that UPS had at all times a searchable electronic data base showing the number of persons who fit within the proposed class definition. Specifically, Defendants' own removal petition admitted that UPS assigned a "SKU" for notary

services and that Defendants have electronic records showing exactly how many

persons purchased notary services at New Jersey UPS stores and how much they

were charged. Ta27 to Ta28, Declaration of UPS Vice President Judith Milner in

Support of Notice of Removal, wherein the UPS Vice President admits at Paragraphs

3-5:

> **"3. TUPSS, Inc. maintains records of how individual transactions are coded into the Point of Sale ('POS') system by employees at The UPS Store® centers.**
>
> **4. There are several codes, or SKUs, that employees at The UPS Store® centers typically use to record a transaction for notary services.**
>
> **5. For the time period May 13, 2014 – December 31, 2020, employees at The UPS Store® centers in New Jersey entered 1,068,852 transactions in the POS system using the SKUs that are typically associated with notary transactions." (emphasis added)**

As the District Court below noted, Defendants did more than simply possess

this searchable data base. More than eight months before the removal, Defendants

actually searched for and produced this very data in spread sheet form to the plaintiff

in *McLaren* **on December 11, 2020**. A12, Remand Opinion at Page 13: **"removal**

**should have occurred within thirty days from December 11, 2020—the date that**

**Defendants produced the data in the McLaren Action."**[3]

---

[3] As noted earlier, despite the fact that Plaintiff Tripicchio served discovery seeking information on class size in November 2020, Plaintiff Tripicchio did not learn of the existence of the UPS data base, the fact that this data had already been produced in

Thus, as the District Court correctly found, Defendants in the case at bar – unlike Plaintiff Tripicchio – had actual knowledge of that number of proposed class members exceeded one million by December 11, 2020. Because Defendants were already aware from the complaint that Plaintiff Tripicchio sought over $12.50 per class member in damages, Defendants were thus aware by December 11, 2020 that the $5 million amount in controversy had been met in both the case at bar and in *McLaren*. As stated by Judge Wolfson in her remand opinion at A10 to A11 (Page 10-11):

> **"Defendants should have reasonably and intelligently been able to calculate the amount in controversy for purposes of removal. Indeed, Defendants' notice of removal performs the exact calculation required with no explanation as to why it could not have done so sooner. In that connection, TUPSS's internal records demonstrate that for the putative six year class period there were 1,068,852 transactions for notary services at its franchise locations in New Jersey. (Declaration of Judith Milner, dated July 28, 2021, in Support of Defendants' Notice of Removal ('Milner Decl.'), ¶ 5.)"**

Indeed, Defendants did more than simply consult their own records on class size on December 11, 2020, Defendants actually produced the UPS spreadsheets showing the over one million notary transactions in New Jersey to the *McLaren* plaintiff in discovery on December 11, 2020 (while keeping them from Plaintiff Tripicchio). Based on this, Judge Wolfson correctly held that Defendants had actual

---

discovery in *McLaren*, or that the proposed class exceeded one million, until they read all of this in Defendants' removal petition dated August 3, 2021.

knowledge by December 11, 2020 that the $5 million CAFA threshold in both the case at bar and the *McLaren* case were met. *See* A12 (**"removal should have occurred within thirty days from December 11, 2020—the date that Defendants produced the data in the McLaren Action."**).

E. **The District Court Correctly Noted that Defendant UPS Pursued a Deliberate Strategy of Refusing to Act on What It Knew About the Amount in Controversy For Eight Months Until UPS Obtained a Disadvantageous Ruling from the New Jersey Appellate Division**

A defendant in a proposed class action cannot claim ignorance of the amount in controversy by refusing to simply "add up" the number of class members and then multiply that number by the amount sought per class member. In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013), for example, the Ninth Circuit – which invented the doctrine on which Defendants seek to rely – rejected the argument that the law somehow **"freed defendants from the need to make this sort of mathematic calculation"** and held that a defendant must **"apply a reasonable amount of intelligence in ascertaining removability"** and that **"multiplying figures clearly stated in a complaint is an aspect of that duty."** *See also Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1181 (E.D. Cal. 2020) (**"while 'defendants need not make extrapolations or engage in guesswork; yet the statute requires a defendant to apply a reasonable amount of intelligence in ascertaining removability.' Multiplying figures clearly stated in a complaint is an aspect of that duty."**).

15

Courts and cases have recognized the potential for abuse that would come from allowing a defendant to ignore facts of which it is aware in order to hold open the option of removing to federal court after a state court makes an adverse ruling. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013):

> **"defendants will be able to take advantage of the fact that neither the 'initial pleading' nor any later document received from plaintiff triggers one of the two thirty-day periods. <u>In such cases, defendants may sometimes be able to delay filing a notice of removal until it is strategically advantageous to do so… It is thus at least theoretically possible in a CAFA case for a defendant to wait until the state court has shown itself ill-disposed to defendant,</u> or until the eve of trial in state court, before filing a notice of removal." (emphasis added)**

As Judge Wolfson noted, the prediction in *Roth* is precisely what occurred in the case at bar. Defendant UPS actively litigated both the case at bar and the *McLaren* case in New Jersey Superior Court for more than eight months after Defendants knew the number of class members was over one million. UPS moved to dismiss the *McLaren* complaint in New Jersey Superior Court on September 17, 2020, based on the defense argument that N.J.S.A. § 22A:4-14 did not set a maximum legal fee for notarizing a document. The New Jersey Superior Court denied the UPS motion on November 13, 2020, holding that N.J.S.A. § 22A:4-14 very clearly set a maximum legal fee of $2.50 for notarizing a document. UPS then filed a petition with the New Jersey Appellate Division, seeking leave to file an interlocutory appeal of the trial court's ruling. That petition for leave to appeal was

granted and UPS filed an appeal whose principal argument was, once again, that N.J.S.A. § 22A:4-14 did not set a maximum legal fee for notarizing a document. Up to that point, Defendants were perfectly content to litigate in New Jersey state court.

On July 22, 2021, however, the New Jersey Appellate Division utterly rejected the UPS argument and held that N.J.S.A. § 22A:4-14 very clearly set a maximum legal limit of $2.50 for notarizing a document in New Jersey. *See McLaren v. UPS Store Inc., et al.*, No. A-1612-20, 2021 N.J. Super. Unpub. LEXIS 1510, at *15-16 (Super. Ct. App. Div. July 22, 2021) (**"We conclude that the fees for notarial services set by the Statute are the maximum fees that may be charged. Such interpretation is consistent with the plain language of the Statute, the context of the entire legislative scheme of which it is part, the limited caselaw applying the Statute, and its recent legislative history."**).

That ruling by the Appellate Division on July 22, 2021 wholly eviscerated the defense in both the *McLaren* case and the case at bar. UPS concedes that UPS stores in New Jersey charge well over $2.50 to notarize a document. Nor could this fact be denied as Plaintiff's UPS receipt, showing a $15 charge for having a document notarized, is attached to the *Tripicchio* Complaint as an exhibit. Thus, with the July 22, 2021 ruling by the Appellate Division, Defendants' best and perhaps only defense as to liability in either the *McLaren* case or the case at bar suddenly evaporated; at least as long as the matter remained in state court. So, just a few days

17

after suffering the crushing blow of the Appellate Division ruling in state court, Defendants suddenly removed, claiming that they "suddenly" realized/remembered that the UPS electronic records showed all along that the number of class members were over one million and that number was high enough to reach the $5 million CAFA threshold.

**F.    Judge Wolfson Correctly Rejected the Defense Arguments About Whether and When Defendants Were Required to Conduct an Investigation into the Amount in Controversy**

As Judge Wolfson correctly recognized, Defendants' claim that they were not legally required to conduct an "investigation" in order to learn the amount in controversy is and always has been a smokescreen. Whether they were legally required to do so or not, Defendants admit that they did in fact search the UPS data base in December 2020 and learned at that time that the number of class members was over one million. Indeed, unbeknownst to Plaintiff Tripicchio in the case at bar at the time, Defendants actually produced UPS spreadsheets to the *McLaren* plaintiff on December 11, 2020 which showed the number of class members exceeded one million. Defendants then pretended to "forget" what they learned in December 2020 for the next eight months, while they tried their luck in state court, removing only after the New Jersey Appellate Division ruled that UPS could not charge more than $2.50 to notarize a document in New Jersey.

As Judge Wolfson noted, none of the cases on which Defendants seek to rely involve even remotely similar facts. Judge Wolfson correctly recognized the game Defendants were playing in her remand opinion, stating at A13:

> **"there was nothing 'prompt' about Defendants' removal. Rather, Defendants waited an additional seven months from the date of production to file their notice of removal – a strategic move as it awaited the outcome of its appeal before the New Jersey Appellate Division. Indeed, I note the timing between the Appellate Division's decision in *McLaren*, No. A-1612-20, 2021 WL 3085151, which was filed on July 22, 2021, and the filing of the notices of removal at issue."**

G.    <u>**The District Court Also Correctly Recognized that UPS Had Previously Pursued a Similar Tactic in a Notary Fee Class Action In Illinois**</u>

Finally, Judge Wolfson correctly recognized that Defendant UPS had tried the exact same tactic in an earlier class action in Illinois where UPS was accused of charging notary fees higher than state law allowed, captioned *Shavers, et al. v. The UPS Store, Inc. et al.*, No. 21-00720 (N.D. Ill. July 19, 2021). As in the case at bar, UPS litigated the *Shavers* matter in state court for well over 30 days and then removed, justifying its late removal by reference to the same UPS data base of notary transactions and the same arguments it is attempting to use in the case at bar. As in the case at bar, the district court in *Shavers* remanded, finding UPS could not ignore what its own database showed regarding class size and that the removal was therefore untimely. In describing the parallels between *Shavers* and the case at bar, Judge Wolfson noted at A11, n.5 of her remand opinion:

**"I highlight an analogous case involving TUPSS [The UPS Store] originally filed in state court in Illinois. *See Shavers, et al. v. The UPS Store, Inc. et al.*, No. 21-00720 (N.D. Ill. July 19, 2021). In that case, the plaintiff similarly alleges that TUPSS and its Illinois franchisees overcharged for notary fees. The defendants, including TUPSS, then attempted removal from state court to the Northern District of Illinois; however, in its remand order, the district court found that, 'Defendants' estimation of [Plaintiff]'s damages relies on the amended complaint and Defendants' calculation of the number of transactions for notary services at The UPS Store centers in Illinois. [...] Defendants do not explain why they could not have done this calculation upon receipt of Shavers' original or amended Complaint.'...Like *Shavers,* Defendants provide no explanation why they could not have done the same calculations upon receipt of Ms. McLaren's Complaint, or at the very latest upon production of the data on December 11, 2020."**

## Conclusion

For the foregoing reasons, Defendants' Petition to Appeal the Remand of this matter should be denied.

Dated:  February 14, 2022                                   Respectfully submitted,

                                    DeNITTIS OSEFCHEN & PRINCE, P.C.

                                    BY:   */s/ Stephen P. DeNittis*
                                          Stephen P. DeNittis (SD-0016)
                                          525 Route 73 North, Suite 410
                                          Marlton, NJ 08053
                                          Telephone:  (856) 797-9951
                                          Facsimile:  (856) 797-9978
                                          sdenittis@denittislaw.com

## CERTIFICATE OF TYPE-VOLUME LIMITATIONS AND TYPEFACE REQUIREMENTS, BAR MEMBERSHIP, AND ELECTRONIC VIRUS CHECK

I hereby certify that the foregoing opposition complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c) because it contains 5,037 words.

This opposition complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, including serifs, using Microsoft Word in Times New Roman 14-point font.

Pursuant to Local Appellate Rule 28.3(d), I hereby certify that I signed this brief as an active member in good standing of the Bar of the Court of Appeals for the Third Circuit.

Pursuant to Local Appellate Rule 31.1(c), I hereby certify that the text of the brief filed electronically is identical to the text in the paper copies of the brief, and a virus detection program, Windows Defender, was run on the electronic file containing this motion and no virus was detected.

Dated: February 14, 2022                          ___s/ Stephen P. DeNittis___

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on February 14, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system and via email.

Dated: February 14, 2022        s/ Stephen P. DeNittis

# ADDENDUM

## INDEX TO ADDENDUM

**Document**                                                                **Page**

Complaint filed in Superior Court of New Jersey                              Ta1
    *Tripicchio v. The UPS Store, Inc., et al.*
      Docket No. BUR-L-2219-20

Declaration of UPS Vice President Judith Milner                             Ta27
    in Support of Notice of Removal

**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esq. (031381997)**
**Joseph A. Osefchen, Esq. (024751992)**
**Shane T. Prince, Esq. (022412002)**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**

**Attorneys for Plaintiff**

| | |
|---|---|
| VINCENT TRIPICCHIO, on behalf of himself and all others similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>THE UPS STORE, INC. and JB & A ENTERPRISES, INC.,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION BURLINGTON COUNTY<br><br>DOCKET NO. BUR-<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1.　This is a class action brought on behalf of a class composed of customers who, between November 16, 2014 and the present, were charged notary fees which exceeded New Jersey legal limits for notarizing documents by Defendants at UPS Store locations in New Jersey.

2.　As outlined in greater detail herein, <u>N.J.S.A.</u> § 22A:4-14 sets the maximum allowable fees a New Jersey notary public can charge for notarizing a document that does not relate to the sale or financing of real estate at $2.50 and does not permit any additional fees for notarizing such documents, whether those fees are labeled as **"Notary Convenience"** fees or otherwise.

3.　As outlined in greater detail herein, Defendants employ a uniform policy of charging $15 for notarizing such documents; an amount which is twice the maximum permitted

1

**Ta1**

statutory fee. Defendants describe this $15 fee on the receipt as a $2.50 **"Notary"** fee and an additional $12.50 **"Notary Convenience"** fee.

4.      Such a $12.50 **"Notary Convenience"** fee violates the plain language of N.J.S.A. § 22A:4-14 and is unlawful in New Jersey.

5.      The class complaint seeks to obtain an injunction to end the illegal policy of overcharges and to obtain refunds of the illegal overcharges, with the complaint bringing statutory claims under the New Jersey Consumer Fraud Act, the New Jersey Truth in Consumer Contract, Warranty and Notice Act and common law claims under a theory of unjust enrichment/ disgorgement, as well as a claim for an injunction barring the unlawful practice alleged herein, on behalf of Plaintiff and the class as a whole.

**JURISDICTION AND VENUE**

6.      Jurisdiction over this matter in New Jersey Superior Court is proper in that all claims in this matter arise exclusively under New Jersey state law.

7.      This matter is properly venued in Burlington County in that Plaintiff is a New Jersey citizen who resides in Moorestown, Burlington County, Defendant JB & A Enterprises, Inc. is a New Jersey corporation with its principal place of business in Mount Laurel, New Jersey and the transaction involving Plaintiff described herein took place in Burlington County, New Jersey.

8.      There is no federal subject matter jurisdiction over this matter in that all claims pleaded herein arise exclusively under New Jersey law and no federal claim or federal issue is raised. Moreover, the total amount in controversy is far less than $5 million because the out of pocket losses in this matter are $12.50 per person and the proposed class is less than 5,000

2

**Ta2**

persons. Thus, even with treble damages and a $100 per person statutory penalty, the amount in controversy is less than $1 million.

## THE PARTIES

9.    Plaintiff Vincent Tripicchio is a citizen of New Jersey and resident of Moorestown, Burlington County, who, like every other proposed class member during the class period, was charged a uniform notary fee of $15 by Defendants – described by Defendants as a $.250 **"Notary"** fee and a $12.50 **"Notary Convenience"** fee on the receipt – for notarizing a document at a UPS Store in New Jersey that did not relate to the sale or financing of real estate.

10.    Defendant The UPS Store, Inc. is a Delaware corporation headquartered at 6060 Cornerstone Court West, San Diego, California 92121. Defendant The UPS Store, Inc. is registered to do business in New Jersey, does in fact do business in New Jersey, and may be served with process by service upon its registered agent in New Jersey.

11.    Defendant JB & A Enterprises, Inc. is a New Jersey corporation with its principal place of business located at 3111 Rt. 38, Suite 11, in Mount Laurel, New Jersey 08054 and is the nominal owner and an operator of UPS Store #1155, located at 3111 Rt. 38, Suite 11 in Mount Laurel, New Jersey 08054.

12.    Defendant The UPS Store, Inc. has a franchise relationship with Defendant JB & A Enterprises, Inc. in that Defendant The UPS Store, Inc. is a franchisor and Defendant JB & A Enterprises, Inc. is a franchisee.

13.    No claims in this case are based solely on the status of Defendant The UPS Store, Inc. as the franchisor of Defendant JB & A Enterprises, Inc. and/or The UPS Store #1155.

14.    Rather, all claims pleaded herein against Defendant The UPS Store, Inc. are based solely on the actions of Defendant The UPS Store, Inc. in that the unlawful uniform policy

alleged herein is not limited to UPS Store #1115 and is in fact followed by all UPS stores in New

Jersey at the direction of Defendant The UPS Store, Inc. That policy was personally created,

ratified and implemented by Defendant The UPS Store, Inc. and Defendant The UPS Store, Inc.

requires its New Jersey franchisees to uniformly follow said unlawful uniform policy. Moreover,

Defendant The UPS Store, Inc. requires its New Jersey franchisees to pay Defendant The UPS

Store, Inc. a share of the proceeds of said unlawful uniform policy and thus The UPS Store Inc is

a holder of such illegal funds and is a necessary defendant for any claims of reimbursement,

refund and/or disgorgement.

## FACTS WHICH GIVE RISE TO THE CLASS CLAIMS

15.    As a matter of uniform policy, each UPS Store in New Jersey offers notary

services to customers.

16.    The notary services performed by Defendants at UPS Stores in New Jersey are

almost exclusively for purposes unrelated to the sale or financing of real estate, such as

notarizing power of attorney documents, wills and affidavits.

17.    Indeed, notarization of documents relating to the sale or transfer of real estate are

routinely performed by a title agent or attorney at the closing. Notarization of documents relating

to the financing of real estate are routinely performed by a bank or mortgage company employee

when the notarized document relates to a mortgage. Such notarizations are not done at UPS

Stores.

18.    New Jersey law places a legal limit on the fees that can be charged for notarizing

documents in New Jersey.

19.    Specifically, N.J.S.A. § 22A:4-14 provides that for notarizing any document

which does not relate to the transfer or financing of real estate, a notary may charge a fee of no

4

**Ta4**

more than $2.50. See N.J.S.A. § 22A:4-14, providing that a notary **"shall receive a fee as follows:**

> **For administering an oath or taking an affidavit, $2.50.**
> **For taking proof of a deed, $2.50.**
> **For taking all acknowledgments, $2.50."**

20.     N.J.S.A. § 22A:4-14 does not authorize, and in fact plainly bars, any other type of fee charged for notarizing such documents, including any purported **"Notary Convenience"** fee.

21.     Throughout the class period, Defendants have pursued a uniform policy of charging an illegal $15 fee to notarize all documents unrelated to the sale or transfer of real estate at UPS Stores in New Jersey, with Defendants labeling this $15 fee on the receipt as a $2.50 **"Notary"** charge and a $12.50 **"Notary Convenience"** fee.

22.     This uniform policy is illegal in New Jersey.

23.     N.J.S.A. § 22A:4-14 plainly bars any additional or ancillary charges for notarizing documents and does not permit any additional fees for notarizing documents beyond the statutory fee of $2.50, no matter how that fee is labeled. Thus, Defendants' act in labeling the $12.50 overcharge a **"Notary Convenience"** is unlawful.

24.     Moreover, the $12.50 **"Notary Convenience"** fee is plainly not even for any actual expense or service. This $12.50 additional notary fee is being charged inside the UPS Store where the notary works and thus the customer comes to the notary and not the other way around. Thus the UPS notary has no mileage or travel expenses. Nor are any additional services being performed at UPS beyond simply notarizing the documents at issue.

25.     The unlawful uniform policy alleged herein is not limited to UPS Store #1115 and is in fact followed by all UPS stores in New Jersey at the direction of Defendant The UPS Store,

Inc.

26.    Indeed, that unlawful policy was personally created, ratified and implemented by Defendant The UPS Store, Inc., which requires its New Jersey franchisees to uniformly follow said unlawful uniform policy and requires its franchisees to pay Defendant The UPS Store, Inc. a share of the proceeds of said unlawful uniform policy.

27.    What happened to Plaintiff illustrates Defendants' unlawful policy.

28.    On October 13, 2020, Plaintiff sought to have a durable power of attorney document notarized at Defendants' at UPS Store #1155 in Mt Laurel, New Jersey. See Attachment A, power of attorney document notarized for Plaintiff at UPS Store.

29.    That document did not relate to the sale or financing of real state. Id.

30.    Defendants charged Plaintiff $15 for notarizing that document. See Attachment B, UPS Store receipt dated October 13, 2020, listing a $2.50 **"Notary"** fee and a $12.50 **"Notary Convenience"** fee.

31.    Defendants did not incur any expenses in this transaction for mileage in that Plaintiff traveled to the UPS Store to purchase these notary services, which were performed on the UPS Store premises.

32.    Nor did Defendants perform any additional services for Plaintiff beyond notarizing the single power of attorney document which is attached hereto as Attachment A.

33.    What happened to Plaintiff was not an accident or an oversite. It was part of a uniform policy in which Defendants unlawfully charge a $15 fee for notarizing documents for which N.J.S.A. § 22A:4-14 mandates that the maximum notary fee is no more than $2.50.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action as a class action pursuant to Rule 4:32, on behalf of

himself and all members of the following proposed class:

> **All persons who were charged a fee of more than $2.50 by Defendants
> for notarizing any document not related to the sale or financing of real
> estate at a UPS Store in New Jersey between November 16, 2014 and
> the present.**

35.    Plaintiff also seeks to have a sub-class certified under Rule 4:32 which is defined

as:

> **All persons who were charged a $12.50 "Notary Convenience" fee by
> Defendants for notarizing a power of attorney document, will or
> affidavit at a UPS Store in New Jersey between November 16, 2014 and
> the present.**

36.    Plaintiff also seeks to have a sub-class certified under Rule 4:32 which is defined

as:

> **All persons who were charged a $12.50 "Notary Convenience" fee for
> having a power of attorney document, will or affidavit notarized at
> UPS Store #1155, in Mount Laurel, New Jersey, between November 16,
> 2014 and the present.**

37.    The class and sub-classes are each so numerous that joinder of all members is

impracticable and each includes at least 100 persons.

38.    The exact number and identities of the persons who fit within each proposed class

are contained in Defendants' records and can be easily ascertained from those records.

39.    Common questions of law and fact exist as to each class member.

40.    All claims in this action arise exclusively from a uniform policy as outlined

herein.

41.    No violations alleged in this complaint are a result of any individualized oral

communications or individualized interaction of any kind between class members and

Defendants or anyone else.

42.    In the case at bar, there are clearly a number of issues of law and fact which are

identical as to the entire class and sub-class, including:

    a.  Whether Defendants are lawfully allowed to charge a $15 notary fee to notarize the documents at issue;

    b.  Whether <u>N.J.S.A.</u> § 22A:4-14 bars Defendants from charging more than $2.50 to notarize the documents at issue;

    c.  Whether <u>N.J.S.A.</u> § 22A:4-14 bars Defendants from charging a $12.50 **"Notary Convenience"** fee;

    d.  Whether Defendants' policy of charging notary fees in excess of what is allowed by <u>N.J.S.A.</u> § 22A:4-14 constitutes an unlawful and unconscionable commercial practice in violation of <u>N.J.S.A.</u> § 56:8-2 of the Consumer Fraud Act;

    e.  Whether Defendants' act in offering and presenting signs and form notices relating to the these illegal fees to Plaintiff and the class violated <u>N.J.S.A.</u> § 56:12-16 of the Truth in Consumer Contract, Warranty and Notice Act; and

    f.  Whether plaintiff and the class are entitled to an injunction barring the challenged practice and requiring Defendants to limit notary fees to the amounts permitted by <u>N.J.S.A.</u> § 22A:4-14.

43.    Plaintiff is a member of the class and sub-classes he seeks to represent.

44.    The claims of Plaintiff are not only typical of all class members, they are identical.

45.    All claims of Plaintiff and the class arise from the same course of conduct, uniform policies and procedures as outlined herein.

46.    All claims of Plaintiff and the class are based on the exact same legal theories.

47.    Plaintiff seeks the same relief for himself as for every other class member.

48.    Plaintiff has no interest antagonistic to or in conflict with the class.

49.    Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent himself and the class.

50.    Defendants have acted and/or refused to act on grounds generally applicable to

the class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

51.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would confront Defendants with incompatible standards of conduct.

52.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, inter alia, the damages suffered by each class member are $12.50 per document and are therefore too low to make individual lawsuits economically feasible.

53.    Common questions will predominate, and there will be no unusual manageability issues.

## COUNT I

### Uniform Declaratory Judgment Act, N.J.S.A. 2A:16-51, et seq.

54.    Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

55.    Plaintiff and the class need, and are entitled to, a declaration that Defendants' policy as described herein is unlawful and that Defendants are barred by law from charging more than $2.50 to notarize documents unrelated to the sale or financing of real estate.

56.    Plaintiff and the class members have a significant interest in this matter in that each has been, or will be subjected to, the unlawful policies alleged herein.

57.    Based on the foregoing, a justifiable controversy is presented in this case, rendering declaratory judgment appropriate.

58.    In addition, because the unlawful uniform policies of Defendants are ongoing, Plaintiff and the class also need, and are entitled to, an order for equitable and injunctive relief,

barring the continuation of those policies.

## COUNT II

### Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.

59.   Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

60.   Defendants' uniform policies as described herein constitute sharp and unconscionable commercial practices in the sale of services in violation of N.J.S.A. § 56:8-2 by charging fees in an amount which is higher than the maximum fee allowed by New Jersey law.

61.   As a proximate result of the unlawful conduct by Defendants, Plaintiff and the class members have suffered an ascertainable loss of money and property.

62.   Plaintiff seeks, inter alia, refunds of the illegal overcharges for himself and the class and to obtain a class-wide injunction on behalf of the class under the Consumer Fraud Act barring the continuing illegal policy at issue, as discussed, certified and approved in Laufer v. U. S. Life Ins. Co. in City of N.Y., 385 N.J. Super. 172 (App. Div. 2006).

## COUNT III

### Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14, et seq.

63.   Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

64.   Plaintiff and the class members are "consumers" within the meaning of N.J.S.A. §§ 56:12-15 and 16.

65.   Defendants are "sellers" of services within the meaning of N.J.S.A. §§ 56:12-15 and 16.

66.   By the acts alleged herein, Defendants violated N.J.S.A. § 56:12-16 because, in

10

**Ta10**

the course of their business, Defendants caused consumer notices and signs to be offered and

presented to Plaintiff and the class members which contained provisions that violated their

clearly established legal rights under state law, within the meaning of N.J.S.A. § 56:12-15 and

16.

67.    Specifically, Defendants caused to be offered and presented to Plaintiff and the

class written notices and signs which violate the clearly established rights of Plaintiff and the

class under N.J.S.A. § 22A:4-14 to be charged no more than $2.50 to notarize documents of the

type at issue.

68.    Moreover, Defendants caused to be offered and presented to Plaintiff and the

class written notices and signs which violate the clearly established rights of Plaintiff and the

class under N.J.S.A. § 56:8-2 of the New Jersey Consumer Fraud Act; a New Jersey statute

which provides a right to be free of deceptive and unconscionable practices in the sale of

services.

69.    Plaintiff and the class members seek an order for injunctive relief under

TCCWNA pursuant to N.J.S.A. § 56:12-17, as described in detail herein, against Defendants.

70.    Due to the Defendants' conduct described herein, Plaintiff and the class members

have suffered actual damages.

71.    Pursuant to N.J.S.A. § 56:12-17, Plaintiff also seek a statutory penalty of $100 for

each class member, as well as actual damages and attorney's fees and costs.

## COUNT IV

### Unjust Enrichment/Disgorgement

72.    Plaintiff incorporates all preceding paragraphs as though fully set forth at length

herein.

73.    Plaintiff brings, as an alternative theory of recovery, a claim for refunds on behalf of himself and the class under a theory of unjust enrichment and/or disgorgement.

74.    By the acts alleged herein, Defendants received a benefit from Plaintiff and the class in the form of monies paid by Plaintiff and the class to Defendants which were higher than the fees permitted by New Jersey law.

75.    It is specifically alleged that Defendant The UPS Store Inc. received and possess part of the illegal overcharge collected from Plaintiff and the class and thus this defendant is a holder of illegal funds who is a necessary defendant for any claim of restitution, refund or disgorgement.

76.    The retention of that benefit by Defendants would be unjust.

77.    By the facts alleged herein, equity demands that Defendants disgorge themselves of this benefit.

## COUNT V

### Breach of Contract for Violation of the Implied Duty of Good Faith and Fair Dealing

78.    Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

79.    There exists a contract between class members and at least one defendant relating to the sale of services.

80.    By operation of New Jersey law, there existed an implied duty of good faith and fair dealing in each such contract.

81.    By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing by charging fees in excess of the maximum allowed by New Jersey law.

82.    As a result of this breach by Defendants, Plaintiff and each class member have

suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ask this Court to:

    a. Certify the case as a class action pursuant to Rule 4:32;

    b. Enter an order for injunctive and declaratory relief, enjoining Defendants' unlawful policies as alleged herein, directing Defendants to send a court-approved form of notice to all class members advising them of these violations, and establishing a court-administered program to provide refunds to all class members, with the Defendants being ordered to pay the costs associated with such a program;

    c. Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

    d. Award Plaintiff and the class members treble damages under the Consumer Fraud Act;

    e. Award Plaintiff and the class members a $100 per person statutory penalty under Truth in Consumer Contract, Warranty and Notice Act,

    f. Award Plaintiff reasonable attorneys' fees and costs; and

    g. Grant such other and further legal and equitable relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

PLEASE TAKE NOTICE that the Plaintiff hereby demands a trial by jury as to all parties.

Dated: November 16, 2020           DeNITTIS OSEFCHEN PRINCE, P.C.

BY: _____
        STEPHEN P. DENITTIS, ESQ. (031981997)
        JOSEPH A. OSEFCHEN, ESQ. (024751992)
        SHANE T. PRINCE, ESQ. (022412002)

        *Attorneys for Plaintiff*

**Ta13**

## CERTIFICATION PURSUANT TO RULE 4:5-1

To the best of Plaintiff's knowledge, the matter in controversy is not related to any pending action in New Jersey. No arbitration proceeding is pending or contemplated. There are no other parties known to Plaintiffs at this time who should be joined in this action.

## CERTIFICATION PURSUANT TO N.J.S.A. 56:8-1, et seq.

The undersigned hereby certify that a copy of this complaint has been forwarded to the Attorney General of the State of New Jersey.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Stephen P. DeNittis is designated as trial counsel.

Dated: November 16, 2020                    DeNITTIS OSEFCHEN PRINCE, P.C.

BY: _____

STEPHEN P. DENITTIS, ESQ. (031981997)
JOSEPH A. OSEFCHEN, ESQ. (024751992)
SHANE T. PRINCE, ESQ. (022412002)

*Attorneys for Plaintiff*

14

# Exhibit A

# Durable Power of Attorney

**NOTICE:** THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS DURABLE POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

**Definition of Agent**

As used in this document, the term "Agent" shall include all agent(s), attorney(s)-in-fact, attorneys-in-fact / agents, and mandatary or mandataries who are appointed herein.

**TO ALL PERSONS,** be it known, that I, _Vincent Tripicchio_ , the undersigned Principal, who resides at _630 Garwood Road_ ,
City of _Moorestown_ , County of _Burlington_ ,
State of _New Jersey_ , do hereby appoint _Brenda Tripicchio_ as my
Agent, and _____ as my Agent, who ☐ must act jointly ☒ may act
separately on my behalf.

At the time of the execution of this Durable Power of Attorney,
_Brenda Tripicchio_ resides at _630 Garwood Road_ ,
City of _Moorestown_ , County of _Burlington_ , State of
_New Jersey_ .

At the time of the execution of this Durable Power of Attorney,
_____ resides at _____ ,
City of _____ , County of _____ , State of
_____ .

If one of my Agents is unable to serve for any reason, ☐ I authorize the remaining named Agent to act as my sole Agent OR ☐ I designate _____ , residing at
_____ , City of _____ , County of
_____ , State of _____ , to serve in that person's place.

If both of my Agents are unable to serve for any reason, I designate
_____ , residing at _____ ,
City of _____ , County of _____ , State of
_____ , as my Successor Agent.

©SmartLegalForms                                              ALFP126 Durable Power of Attorney 9-15, Pg. 1 of 7

**Ta16**

**Grant of General Authority**

My Agent shall care for, manage, control, and handle all of my business, financial, property, and personal affairs in my name, place, and stead in as full and complete a manner in which I myself could do, if I were personally present, with respect to the following matters, to the extent that I am permitted by law to act through such a representative and subject to any limitations on or additions to the specified powers inserted after the following:

**(NOTICE:** The Principal must write his or her initials in the corresponding blank space for each of the subdivisions (A) through (M) below for which the Principal WANTS to give the Agent authority. If the corresponding blank space for any particular subdivision is NOT initialled, NO AUTHORITY WILL BE GRANTED for those matters specified in the subdivision. ALTERNATIVELY, the letter corresponding to each power the Principal wishes to grant has been referenced in subdivision "(N)", and the Principal may initial in the blank space to the left of subdivision "(N)" in order to grant each of the powers so indicated.)

( *JW* ) **(A) Real property transactions.** To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, tear down, alter, rebuild, improve, manage, insure, move, rent, lease, sell, convey, subject to liens, mortgages, and security deeds, and in any way or manner deal with all or any part of any interest in real property whatsoever, including specifically, but without limitation, real property lying and being situated in the State of _New Jersey_ , under such terms and conditions, and under such covenants, as my Agent shall deem proper and may for all deferred payments accept purchase money notes payable to me and secured by mortgages or deeds to secure debt, and may from time to time collect and cancel any of said notes, mortgages, security interests, or deeds to secure debt.

( *JW* ) **(B) Tangible personal property transactions.** To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or to take any other security interests in said property which are recognized under the Uniform Commercial Code as adopted at that time under the laws of the State of _New Jersey_ or any applicable state, or otherwise hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem proper.

( *JW* ) **(C) Stock and bond transactions.** To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business, association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

( *JW* ) **(D) Commodity and option transactions.** To buy, sell, exchange, assign, convey, settle, and exercise commodities futures contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions; establish or continue option accounts for the Principal with any securities or futures broker; and, in general, exercise all powers with respect to commodities and options which the Principal could if present and under no disability.

**(E) Banking and other financial institution transactions.** To make, receive, sign, endorse, execute, acknowledge, deliver, and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts, and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations. To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent. To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part. To have free access at any time or times to any safe deposit box or vault to which I might have access.

**(F) Business operating transactions.** To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing, or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust, or other legal entity; operate, buy, sell, expand, contract, terminate, or liquidate any business; direct, control, supervise, manage, or participate in the operation of any business and engage, compensate, and discharge business managers, employees, agents, attorneys, accountants, and consultants; and, in general, exercise all powers with respect to business interests and operations which the Principal could if present and under no disability.

**(G) Insurance and annuity transactions.** To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate or change the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts, unless the Agent is my spouse or only child.

**(H) Estate, trust, and other beneficiary transactions.** To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim, and recover any legacy, bequest, devise, gift, or other property interest or payment due or payable to or for the Principal; assert any interest in and exercise any power over any trust, estate, or property subject to fiduciary control; establish a revocable trust solely for the benefit of the Principal that terminates at the death of the Principal and is then distributable to the legal representative of the estate of the Principal; and, in general, exercise all powers with respect to estates and trusts which the Principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the Principal or require the trustee of any trust for the benefit of the Principal to pay income or Principal to the Agent unless specific authority to that end is given.

**(I) Claims and litigation.** To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my Agent shall deem proper.

**(J) Personal and family maintenance.** To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others, and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

**(K) Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.** To prepare, sign, and file any claim or application for Social Security, unemployment, or military service benefits; sue for, settle, or abandon any claims to any benefit or assistance under any federal, state, local, or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service, or other state, federal, local or foreign statute or regulation; and, in general, exercise all powers with respect to Social Security, unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the Principal could exercise if present and under no disability.

**(L) Retirement plan transactions.** To contribute to, withdraw from, and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings, and other retirement plan, individual retirement account, deferred compensation plan, and any other type of employee benefit plan); select and change payment options for the Principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the Principal could if present and under no disability.

**(M) Tax matters.** To prepare, to make elections, to execute, and to file all tax, Social Security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

**(____) (N) ALL OF THE MATTERS LISTED ABOVE.** YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

**Grant of Specific Authority (Optional)**

My Agent MAY NOT do any of the following specific acts for me UNLESS I have INITIALED the specific authority listed below:

(CAUTION: Granting any of the following will give your Agent the authority to take actions that could significantly reduce your property or change how your property is distributed at your death. INITIAL ONLY the specific authority you WANT to give your Agent.)

(____) Create, amend, revoke or terminate an inter vivos trust.

(____) Make a gift.

(____) Create or change rights of survivorship.

(____) Create or change a beneficiary designation.

(____) Authorize another person to exercise the authority granted under this Durable Power of Attorney.

**Ta19**

(____) Waive the Principal's right to be a beneficiary of a joint and survivor annuity, including a survivor benefit under a retirement plan.

(____) Exercise fiduciary powers that the Principal has authority to delegate.

(____) Disclaim or refuse an interest in property, including a power of appointment.

**Limitation on Agent's Authority**

An Agent that is not my ancestor, spouse, or descendant MAY NOT use my property to benefit the Agent or a person to whom the Agent owes an obligation of support unless I have included that authority in the Special Instructions.

**Special Instructions (Optional)**

Additional powers, if any, that are not inconsistent with the other provisions of this Durable Power of Attorney:

_____

_____

_____

The powers granted hereinabove shall not include the following powers or shall be modified or limited in the following particulars:

_____

_____

_____

Additional powers, if any, granted to the Agent with respect to any power listed above and not eliminated/struck out by the Principal:

_____

_____

_____

**Special Instructions for Gifts**

Special instructions applicable to gifts (initial in front of the following sentence to have it apply):

(____) I grant my Agent the power to apply my property to make gifts to individuals, charities, or to the Agent, up to the amount of $500 per year, per individual or entity, without signature of the Principal, as the Agent determines to be in the Principal's best interest.

Authorization for an Agent to make gifts or transfers of $500 or more requires the Principal to execute a Major Gifts Rider at the same time as the Durable Power of Attorney document.

(____) I grant my Agent the power to make major gifts and transfers of my property set forth under the Major Gifts Rider.

**Nomination of Guardian or Conservator (Optional)**

In the event that a court decides that it is necessary to appoint a Guardian of my person or Conservator of my estate, I hereby nominate _____ , who resides at _____ , City of _____ , County of _____ , State of _____ , to be considered by the court for appointment to serve as my Guardian or Conservator, or in any similar representative capacity.

**Ta20**

**Effective Date [Choose one and only one option.]**

( ✓ ) This Durable Power of Attorney shall be effective immediately.

(_____) This Durable Power of Attorney shall take effect in the event that I become mentally and/or physically incapacitated, as determined and certified in writing by my treating physician, to such an extent that I am unable to independently make important decisions in regard to the management of my own property and finances.

**Durable Provision**

This Durable Power of Attorney shall not be affected by any lapse of time, and shall not be affected by the subsequent incapacity of the Principal except as provided by statute in the State of _New Jersey_ , and all acts done by the Agent under the power granted herein during any period of the Principal's disability or incapacity shall have the same effect and inure to the benefit of and bind the Principal and Principal's successors in interest as if the Principal were competent and not disabled.

My Agent hereby accepts this appointment subject to its terms and agrees to act and perform in the said fiduciary capacity and observe the standards of care applicable to trustees as described by relevant _New Jersey_ statute consistent with my best interests as his, her, or their best discretion deem advisable, and I affirm and ratify all acts so undertaken.

If the Agent is a corporate Agent, the Agent shall not use my assets for its benefit, nor the benefit of its officers or directors.

If this Durable Power of Attorney is revoked or terminated, such revocation or termination for any reason in accordance with law shall be ineffective as to any Agent unless and until actual notice or knowledge of such revocation or termination shall have been received by the Agent.

My subsequent death shall not revoke or terminate the agency granted herein as to my Agent who, without actual knowledge of my death, acts in good faith under this Durable Power of Attorney. Any action so taken, unless otherwise invalid or unenforceable, shall bind my successors in interest.

**Notice to Third Parties**

To induce any third-party to act hereunder, I hereby agree that any third-party receiving a duly executed copy or facsimile of this instrument may act hereunder, and that revocation or termination shall have been received by such third-party, and I for myself and for my heirs, executors, legal representatives, and assigns, hereby agree to indemnify and hold harmless any such third-party from and against any and all claims which may arise against such third-party by reason of such third-party having relied on the provisions of this instrument.

THIS DURABLE POWER OF ATTORNEY MAY BE REVOKED OR AMENDED IN WRITING BY ME AT ANY TIME.

_____     10-13-20 (date)

Vincent Tripicchio , Principal

_____     10/13/20     (date)
First Witness     Heather Shenton

_____     10/13/20     (date)
Second Witness     Christopher Sabb

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _New Jersey_            )
COUNTY OF _Camden_            )

On _October 13_, 20_20_, before me, _Lorrianne Zamora_, a Notary Public, personally appeared _Vincent Tripicchio_, as Principal, and _Heather Shenton_, as Witness, and _Christopher Sabb_, as Witness, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New Jersey_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary

Affiant ____ Known _X_ Produced ID

Type of ID _New Jersey Driver's License_

(Seal)

LORRIANNE G. ZAMORA
Commission # 2415125
Notary Public, State of New Jersey
My Commission Expires
December 1, 2021

## AGENT'S SIGNATURE AND ACKNOWLEDGMENT

### First Agent Acknowledgment

I, _____ , am the person identified as the Agent for the Principal named in this document and acknowledge my legal duties.

_____          _____
Date                                              Signature

### Second Agent Acknowledgment (if applicable)

I, _____ , am the person identified as the Agent for the Principal named in this document and acknowledge my legal duties.

_____          _____
Date                                              Signature

# Exhibit B

The UPS Store - #1155
3111 Route 38
Suite 11
Mt. Laurel, NJ 08054
(856) 234-7447

10/13/20  11:36 AM

We are the one stop for all your
shipping, postal and business needs.

We offer all the services you need
to keep your business going.

```
█ ▌██▐▐█▐▌█ █▐██▌▐▐█▌█▐▐▐▌▐█▐██▐▐▐▌█▐▐▐▌▐▐█▐██▌▐▐▌█ ▌██
```

001 000003 (011)                  TO $   2.50
     Notary
002 500282 (011) ****S****        TO $  12.50
     Notary Convenience

                     SubTotal  $  15.00
                        Total  $  15.00

           AMERICAN EXPRESS    $  15.00
ACCOUNT NUMBER *         *************3013
Appr Code: 823623  (I)  Sale

ENTRY METHOD: ChipRead
MODE: Issuer
AID: A000000025010801
TVR: 0800008000
TSI: F800
AC: D430AA7F14021EE8
ARC: 00

Receipt ID 83337782641592888372 002 Items
CSH: Lorrianne        Tran: 6932 Reg: 001

Thank you for visiting our store.
Please come back again soon.

Whatever your business and personal
needs, we are here to serve you.

We're here to help.
Join our FREE email program to receive
great offers and resources.

www.theupsstore.com/signup

# Civil Case Information Statement

**Case Details: BURLINGTON | Civil Part Docket# L-002219-20**

**Case Caption:** TRIPICCHIO VINCENT  VS THE UPS
STORE, INC.

**Case Initiation Date:** 11/16/2020

**Attorney Name:** STEPHEN P DE NITTIS

**Firm Name:** DE NITTIS OSEFCHEN AND PRINCE PC

**Address:** 5 GREENTREE CENTRE 525 ROUTE 73 NORTH
STE 410

MARLTON NJ 08053

**Phone:** 8567979951

**Name of Party:** PLAINTIFF : Tripicchio, Vincent

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** TORT-OTHER

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Vincent Tripicchio?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
     **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
     **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** YES

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

11/16/2020
Dated

/s/ STEPHEN P DE NITTIS
Signed

**Ta25**

Ta26

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT TRIPICCHIO, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>THE UPS STORE, INC., JB & A Enterprises, Inc.,<br><br>Defendants. | Case No. 1:21-cv-14512 |

## DECLARATION OF JUDITH MILNER IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL

I, Judith Milner, under penalty of perjury, declare as follows:

1.    I am currently the Vice President for Corporate Owned Areas at The UPS Store, Inc. ("TUPSS, Inc."). From May 1, 2013 through February 1, 2021, I was Vice President of Operational Support at TUPSS, Inc. My responsibilities as Vice President of Operational Support included providing operational support for the approximately 4,800 independently owned and operated The UPS Store® franchises. The following facts are based on my personal knowledge and my review of and familiarity with pertinent business records. If called to testify regarding the matters set forth herein, I would do so.

2.    The UPS Store, Inc. is a Delaware corporation headquartered in San Diego, California.

3.    TUPSS, Inc. maintains records of how individual transactions are coded into the Point of Sale ("POS") system by employees at The UPS Store® centers.

ny-2190029

**Ta27**

4.      There are several codes, or SKUs, that employees at The UPS Store® centers typically use to record a transaction for notary services.

5.   For the time period May 13, 2014 – December 31, 2020, employees at The UPS Store® centers in New Jersey entered 1,068,852 transactions in the POS system using the SKUs that are typically associated with notary transactions.

I, Judith Milner, hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 28, 2021.

Judith Milner